## MARCHIONDO v. WACASEY.

### No. 3701.

Court of Civil Appeals of Texas. El Paso.
Feb. 17, 1938.

A. T. Folsom, of Wink, for appellant.

H. E. Wassell, of Wink, and Hubbard & Kerr, of Pecos, for appellee.

NEALON, Chief Justice.

This is an appeal from an order of the district judge of Winkler county, refusing to grant a temporary injunction. Charlie Marchiondo leased the Ritz Hotel property in the city of Wink to Tom Dyess for a period of one year ending December 20, 1927, at a rental of $300 per month. The first and last month's rents were paid in advance. Rentals for the other months were payable monthly in advance. The contract permitted subleasing. It also provided that a holding over should be construed as a tenancy from month to month at a rental of $300 per month.

October 8, 1937, Dyess assigned the lease to Mrs. L. E. Wacasey, a feme sole, who was defendant in the district court. December 21, 1937, appellant (plaintiff below), through his agent, Sam Carlini, sought to learn of Mrs. Wacasey her intentions as to continuing as a tenant. She informed him that she had an arrangement with the attorneys for Albert R. Seigle, under which she was holding the place as Seigle's tenant at a rental of $100 per month, and that she had deposited six months' rent in a Pecos bank under an agreement that it should be returned to her in the event she were unable to retain possession of the place. Seigle was and is plaintiff in a suit in trespass to try title in which he seeks to recover the hotel property from appellee.

Mrs. Wacasey did not redeliver the property to appellant before repudiating her tenancy and attorning to Seigle.

Appellant sought a mandatory temporary writ of injunction, claiming that the legal remedy of forcible detainer was inadequate because it would not determine the right to possession of the furniture and furnishings, which were alleged to exceed $500 in value, and would be subject to damage by defendant's retention of them, and that such a proceeding would necessitate a multiplicity of suits.

He alleged that the remedy of sequestration was inadequate, because it would result in closing the hotel for ten days after levy, thereby ousting all tenants and destroying the good will of the business and the intangible value adhering to the property as a going concern; and, in the event the property were replevied by defendant, her bond would not protect against loss by depreciation. Plaintiff alleged that defendant was insolvent.

Carlini testified that several persons desired to rent the property; that he could rent it for $200 per month. There was no evidence that appellant had entered into a rental contract other than the one under which appellee held. Nor was it shown that her first entry was made with the concealed intention of holding the property for Seigle.

Appellee owns no property subject to execution, but, apparently, has been able to pay her debts as they fell due.

After hearing, the district judge refused the injunction, and, as stated, the appeal is from this order.

### Opinion.

 The effect of granting appellant's prayer would be to oust appellee from possession of the building and furnishings and restore them to appellant. It is claimed that this is necessary to protect the intangible value of the hotel as a going concern. The lease contract contains no express provision that the property shall be operated as a hotel. There is no evidence that appellant or any of his prospective tenants contemplate operating a hotel upon the premises. Intangible values result from the profits of a business as actually conducted. State v. Austin & N. W. R. R. Co., 94 Tex. 530, 62 S.W. 1050; Reagan County Purchasing Co. v. State, Tex.Civ.App., 110 S.W.2d 1194. In this case there was no evidence of profits accruing as a result of the operation of the hotel. Whether it was a profitable or losing venture is a question unanswered by the evidence. Appellant's agent, Carlini, testified that the rental value of the hotel without the furniture would be "at least" $30 per month, and that the rental value of the furniture when not used in connection with the hotel was one hundred fifty or two hundred dollars per month.

The question before us is: Did the district judge abuse his discretion in refusing the injunction? The general rule is that a mandatory injunction is not available for the purpose of dispossessing one who is in peaceable possession of land, pending an adjudication of the relative equities of those claiming the right of possession. This is the statement of the rule made by the San Antonio Court of Civil Appeals in Hudspeth v. Gugenheim, 278 S.W. 952, 954, which seems to be appellant's main reliance. In that case the court said, "We cannot say the trial judge has abused the discretion lodged in him," in granting a temporary mandatory injunction that had the effect of dispossessing a tenant who had refused to comply with a condition under which the landlord was willing to renew a lease, the landlord, in the meantime, relying upon an effective termination, having entered into a contract with another tenant who leased the premises for two years, and who had demanded possession of them. The court held that the fact that recovery of damages for rental value would not compensate the landlord upon his liability to the new lessee for breach of the latter's contract of lease, as to which the landlord could not recover over against the tenant who was wrongfully withholding possession of the property, justified the granting of the mandatory injunction. The evidence adduced upon the hearing of the instant case does not reflect the existence of a comparable situation. It does not show an abuse of discretion upon the part of the trial judge in denying the relief sought.

Judgment is affirmed.