**MGJ CORPORATION, Appellant,**

v.

**The CITY OF HOUSTON, Appellee.**

**No. 16744.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 21, 1976.

Rehearing Denied Nov. 18, 1976.

Charles D. Kipple, Houston, Saccomanno, Clegg, Martin & Kipple, Houston, of counsel, for appellant.

Jonathan Day, City Atty., Fred R. Spence, Senior Asst. City Atty., Houston, for appellee.

ON MOTION FOR REHEARING

COLEMAN, Chief Justice.

The MGJ Corporation has presented a motion for rehearing in the captioned case which we find meritorious. The motion is therefore granted and the opinion handed down on September 2, 1976, is withdrawn, and this opinion substituted.

This is an appeal from an order denying an application for a temporary injunction. The judgment will be reversed.

Appellant, MGJ Corporation, owns the Santa Rosa Theater located on Lot 2 of the Santa Rosa Community Center, a Subdivision in Harris County, Texas. The City of Houston has located a police substation on certain property which it owns out of Lot 1 of said Subdivision. Adjacent to both properties is a 3-acre tract of land shown on the plat of said Subdivision as "private parking lot." The Santa Rosa Community Center was platted on property owned by W. R. Parker and others, hereinafter referred to as Parker Brothers, and is located at the intersection of Telephone Road and Park Place Boulevard. The plat of the community center was filed for record on August 18, 1945, and a replat was subsequently filed in May 1946. This community center was a part of a larger subdivision, and the property was subject to certain restrictions filed of record in 1941. These restrictions provided that the property which was subsequently platted as the Santa Rosa Community Center could be used only for certain business enterprises.

In 1945 the Parkers conveyed a lot to Interstate Circuit, Inc. which was subsequently replatted as Lot 2 of the Santa Rosa Community Center. This deed stated that as part of the consideration for the sale, a certain 2.75 acre tract "shall be set aside and used as a parking area, such parking area to be used exclusively by the grantee herein, its successors and assigns and other purchasers and their tenants of property located within said Community Center; provided, however, in the event a bowling alley is established and maintained within said Community Center, the patrons of same shall be restricted against the use of said parking area." The original plat of the Santa Rosa Community Center shows a 2.75 acre tract labelled "Reserved as private property for parking area" adjacent to the property purchased by the Interstate Circuit, Inc. This same area appears on the resubdivision plat under the designation "private parking lot" expanded to include 3.1173 acres.

On October 19, 1946, the Parkers conveyed a portion of Lot 1, Block 9, Santa Rosa Community Center, to Joe Weingarten and others. Subsequently the remainder of this lot was conveyed to J. Weingarten, Inc. by the Parkers. Subsequently conveyances placed title to the entire lot in J. Weingarten, Inc. This property consisted of all of the community center north of the private parking lot and bordering on both Park Place Boulevard and Telephone Road. It adjoined the Santa Rosa Theater property. Neither of the conveyances by which this property was acquired by Weingarten contained a grant of an easement for use of the private parking lot.

Subsequently J. Weingarten, Inc. conveyed the northwest 200 by 240 feet of said Lot 1 to the Odd Fellows Hall Association. In this conveyance an easement for ingress and egress was created over the north 110 feet by 200 feet of the retained property for the benefit of the Odd Fellows Hall Association and the remaining property owned by J. Weingarten, Inc. Thereafter by two conveyances the City of Houston acquired a portion of Lot 1, Block 9 measuring 175 feet along Park Place Boulevard with a depth of 240 feet from J. Weingarten, Inc.; the first of these conveyances was dated March 26, 1959. At some date not shown by the record a fence was erected dividing the property owned by the City of Houston from the parking lot area.

In May 1973 the MGJ Corporation acquired Lot 2 from the Interstate Circuit, Inc. A theater had been erected and was operated on Lot 2 by Interstate Circuit, and the parking lot was used by its patrons. MGJ Corporation has continued to operate the theater and its patrons continue to use the parking lot. The City of Houston built a police substation on the property which it acquired in the community center and began using it as such some thirteen years prior to the date of trial. There is testimony that the officers assigned to that station use the parking lot to park their private cars and on occasion police cars were

parked on the parking lot. In January 1976 an opening was made in the fence separating the police station property from the parking lot area and large numbers of marked police cars were parked on the lot on a regular basis. There is testimony that the management of the theater received complaints from its patrons that they were unable to park in the parking lot and that they were having to park a distance from the theater. There is testimony that the parking of the marked police cars on the lot has hurt the business of the theater. The testimony is conflicting as to whether the parking lot is adequate in size to handle the parking needs of the theater and of the police station at peak use periods.

A trial court has broad discretion in determining whether to grant or to deny a temporary injunction. *Janus Films, Inc. v. City of Fort Worth,* 163 Tex. 616, 358 S.W.2d 589 (1962). Where the only relief sought on final trial is a permanent injunction, the applicant must show a probable right on final hearing to the permanent injunction and a probable injury in the interim. *Sun Oil Co. v. Whitaker,* 424 S.W.2d 216 (Tex.1968). An erroneous application of the law to undisputed facts will constitute an abuse of discretion. *City of Spring Valley v. Southwestern Bell Telephone Co.,* 484 S.W.2d 579 (Tex.1972). A temporary injunction will not be granted when the evidence raises material disputed issues of fact. *Dallas Independent School District v. Daniel,* 323 S.W.2d 639 (Tex.Civ.App.—Dallas 1959, writ ref'd n.r.e.); *Scurry Area Canyon Reef Operators Corp. v. Popnoe,* 283 S.W.2d 819 (Tex.Civ.App.—Eastland 1955, no writ).

The owner of an exclusive easement is the dominant tenant and is entitled to the free and undisturbed use of its property for the purposes of the easement even as against the owner of the fee. *Gulf View Courts, Inc. v. Galveston County,* 150 S.W.2d 872 (Tex.Civ.App.—Galveston 1941, writ ref'd). Where the language of the deed is doubtful it will be construed to confer on the grantee the greatest estate permissible under the instrument. *Gulf View Courts v. Galveston County,* supra.

Easements appurtenant are interests in land which require a writing to create or transfer. There are some exceptions to the rule: dedication, implied easements appurtenant, and easements by estoppel in pais. *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196 (Tex.1962). There cannot be a private dedication or a dedication to a limited number of persons. *Drye v. Eagle Rock Ranch, Inc.,* supra.

No evidence was produced in this case to establish that the City is entitled to use the easement in question by reason of dedication, implied easement appurtenant, or by reason of an easement by estoppel in pais. *Drye v. Eagle Rock Ranch, Inc.,* supra. The question then arises whether an easement appurtenant to the land now owned by the City was created by the deed from the Parkers to Interstate Circuits, Inc.

In *Drye* there was a contest between the grantees of various lots in a subdivision against their grantor to establish an easement for recreational use over lands retained by the grantor. No easements were granted in the deeds to any of the lot owners. There was a contention that such an easement was necessarily implied, but this contention was rejected by the court. In *Drye* the court pointed out:

"For there to be an easement appurtenant, either expressed in writing or implied, there must be a dominant estate and a servient estate. The easement attaches to the land of the dominant estate and not merely for the convenience of the owner thereof independent of the use of his land. The servient estate is subject to the use of the dominant estate to the extent of the easement granted or reserved . . . ."

A reservation or exception in favor of a stranger to a conveyance is inoperative and cannot operate as a conveyance to the stranger of an interest in land. *Joiner v. Sullivan,* 260 S.W.2d 439 (Tex.Civ.App.—Texarkana 1953, writ ref'd). Title to the servient estate in the "private parking lot" and the remainder of Lot 1 in the Santa

Rosa Community Center is shown to be in Parker Brothers & Company, Inc. The City of Houston has shown no right to use the parking lot derived from Interstate Circuit, Inc., and no such right was granted to a predecessor in title by Parker Brothers & Company, Inc.; it has no right to make use of the parking lot and may be barred from making use thereof by the owner of a non-exclusive easement. *Ladies' Benevolent Society of Beaumont v. Magnolia Cemetery Co.,* 288 S.W. 812 (Comm.App. of Texas, Sec. A, 1926).

The provision in the deed from the Parkers to Interstate Circuit, Inc. that a 2.75 acre tract "shall be set aside and used as a parking area, such parking area to be used exclusively by the Grantee herein, its successors and assigns, and other purchasers and their tenants of property located within said Community Center." did not create an easement in favor of the land adjacent to the parking lot title to which the Parkers retained. It is essential to the creation of an easement appurtenant that there be a dominant estate and a servient estate in tracts of land owned separately by two or more individuals. *Fleming v. Adams,* 392 S.W.2d 491 (Tex.Civ.App.—Houston 1965, ref'd n.r.e.).

Since neither the City nor its predecessor in title was a party to the deed by which the Parkers conveyed the easement in question to Interstate Circuit, Inc. it is a stranger to the deed and may not invoke the doctrine of estoppel to enforce the provision purporting to grant the right to use the parking area to "other purchasers and their tenants" of property located within said community center. *Cone v. Cone,* 266 S.W.2d 480 (Tex.Civ.App.—Amarillo 1953, writ dism'd at 266 S.W.2d 860).

Since the City has no valid claim of right to use the parking area jointly with the plaintiff, it is in the position of a trespasser. It is well settled that an injunction is a proper remedy to restrain repeated or continuing trespasses where the remedy at law is inadequate because of the nature of the injury, or the necessity for multiplicity of actions to obtain redress. *Boiles v. City of Abilene,* 276 S.W.2d 922 (Tex.Civ.App.—Eastland 1955, writ ref'd).

Since this is an appeal from the denial of a temporary injunction, this court must determine whether or not the trial court abused its discretion by such refusal. The trial court must be held to have abused its discretion when it fails or refuses to apply the law to conceded or undisputed facts. *Southland Life Ins. Co. v. Egan,* 126 Tex. 160, 86 S.W.2d 722 (1935).

In a hearing on an application for a temporary injunction the only question before the court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending a final trial of the case on its merits. Where the pleadings and the evidence present a case of probable right and probable injury, the trial court is clothed with broad discretion in determining whether to issue the writ and its order will be reversed only on a showing of a clear abuse of discretion. *Transport Co. of Texas v. Robertson Transports,* 152 Tex. 551, 261 S.W.2d 549 (1953).

In discussing the discretionary authority of a trial court in acting upon an application for a temporary injunction in *General Telephone Co. v. City of Wellington,* 156 Tex. 238, 294 S.W.2d 385 (1956), the court said:

"However, this judicial rule by its very terms is one which can have clear meaning only as it has been actually applied to particular states of fact, and this is particularly so in the light of art. 4662, Vernon's Tex.Civ.Stats.Ann., which expressly, and in the broadest terms, guarantees the right of appellate review of both the refusal and granting of temporary injunctions. Usually, at least, the area of discretion is one involving either a matter of deciding the facts upon conflicting evidence or one of judgment about imponderables, such as future facts, or the balancing of equities."

We conclude that the trial court abused its discretion. The record leaves no room for a discretionary error as to the

petitioner's chances of final success. It is established without dispute that the City has been guilty of a series of trespasses on the land wherein the petitioner has an easement for parking, and that petitioner has suffered at least minor interference with the use of its easement by reason of the trespasses. The trial court erroneously applied the law to the undisputed facts. *General Telephone Company v. City of Wellington,* supra.

It follows that the temporary injunction should have been granted as prayed for. The judgment of the trial court is, therefore, reversed and the cause is remanded to the trial court for entry of judgment accordingly.